56 P.3d 780

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dane K. ALEXANDER, Defendant–Appellant.**

**No. 27400.**

Court of Appeals of Idaho.

Oct. 9, 2002.

---

John M. Adams, Kootenai County Chief Public Defender; J. Bradford Chapman, Deputy Public Defender, Coeur d'Alene, for appellant. J. Bradford Chapman argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

PERRY, Chief Judge.

Dane K. Alexander appeals from his judgment of conviction and sentence for attempted trafficking in methamphetamine or amphetamine by manufacturing. We affirm.

## I.

### FACTS AND PROCEDURE

On October 2, 2000, an officer of the Kootenai County Sheriff's department applied for a warrant to search the buildings and vehicles located on a five-acre parcel of property in Rathdrum. The property included a mobile home being used as a residence by Alexander and his girlfriend, as well as a shed, a camp trailer, a Volkswagon, and several abandoned vehicles. The officer believed a search of the property would yield evidence relating to the manufacturing, possession, and sale of controlled substances.

To obtain the search warrant, the officer provided to the magistrate an oral affidavit to show probable cause. The officer testified as to the nature and sources of the information upon which he relied. These sources included an anonymous caller, an identified neighbor, the officer's own surveillance, and the owner of the property. Based on the officer's testimony, the magistrate found probable cause and issued a search warrant for the buildings and vehicles on the property.

The next morning, law enforcement officers executed the warrant. Officers searched the mobile home, the shed, and the camp trailer, where they seized illegal drugs and paraphernalia used to manufacture and ingest illegal drugs. In the mobile home, officers also found and detained Alexander, who gave statements concerning the illegal drugs and drug paraphernalia found on the property. That same day, Alexander was arrested and taken into custody.

The state initially charged Alexander with trafficking in methamphetamine or amphetamine by manufacturing, manufacturing a controlled substance, possession of a controlled substance with the intent to deliver, and manufacture of a controlled substance where a child is present. Alexander filed a motion to suppress the evidence obtained during execution of the warrant, contending in part that it was issued without probable cause. After briefing and a hearing, the district court granted the motion to suppress with respect to the evidence found in the mobile home and camp trailer, but denied the motion with respect to the evidence found in the shed.

Pursuant to a plea agreement, Alexander pled guilty to attempted trafficking in methamphetamine or amphetamine by manufacturing, I.C. § 37–2732B(a)(3), and reserved the right to appeal the district court's partial

denial of his motion to suppress.[1] The other charges were dismissed. The district court sentenced Alexander to a unified term of five years, with two years fixed. The district court also imposed the statutory minimum fine of $10,000.

## II.

## ANALYSIS

On appeal, Alexander argues that the district court erred when it determined that the search warrant of the shed was properly issued. Alexander contends that the warrant was not supported by probable cause. He also argues that the mandatory fine serves no penological purpose and constitutes an unconstitutional infringement of the separation of powers doctrine and the prohibition against excessive fines and cruel and unusual punishment.

### A. Search Warrant

Alexander argues that the search warrant was not valid and that the evidence obtained from the shed pursuant to the warrant should have been suppressed. In support of this argument, Alexander asserts that the warrant was issued without probable cause because the oral affidavit failed to establish the reliability of the informants and contained stale information.

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). Alexander does not dispute the district court's factual findings. Instead, Alexander contends that those facts failed to establish probable cause.

■ When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illi-nois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In this evaluation, great deference is paid to the magistrate's determination. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 546; *State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct.App.1997). The test for reviewing the magistrate's action is whether he or she abused his or her discretion in finding that probable cause existed. *State v. Holman*, 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct.App.1985). When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid. *State v. Kelly*, 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct.App.1984).

■ The Fourth Amendment to the United States Constitution states that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 17, of the Idaho Constitution is virtually identical to the Fourth Amendment, except that "oath or affirmation" is termed "affidavit." In order for a search warrant to be valid, it must be supported by probable cause to believe that evidence or fruits of a crime may be found in a particular place. *Josephson*, 123 Idaho at 792–93, 852 P.2d at 1389–90. In this case, a warrant was issued based upon the magistrate's finding of probable cause pursuant to an oral affidavit.

■ Alexander argues that the warrant lacked probable cause because the oral affidavit failed to establish the veracity and basis of knowledge of the anonymous informant under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89

---

1. The state did not appeal that portion of the district court's order granting suppression of any evidence found in the mobile home and camp trailer.

S.Ct. 584, 21 L.Ed.2d 637 (1969). However, this Court's analysis of probable cause is governed by the United States Supreme Court decision in *Gates,* which abandoned the *Aguilar–Spinelli* two-prong test. *See Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *see also Lang,* 105 Idaho at 684, 672 P.2d at 562; *State v. McAndrew,* 118 Idaho 132, 134, 795 P.2d 26, 28 (Ct.App.1990). When determining whether probable cause exists:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *see also Wilson,* 130 Idaho at 215, 938 P.2d at 1253. The *Gates* Court further stated that, while veracity and basis of knowledge of an informant are highly relevant in determining the value of an informant's report, they are best viewed as "issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543. This Court has similarly stated that the two prongs are but factors to be considered with the whole affidavit in determining whether the magistrate had a substantial basis for finding probable cause. *See State v. Wengren,* 126 Idaho 662, 667, 889 P.2d 96, 101 (Ct.App.1995).

On appeal, Alexander acknowledges that the two-prong test has been replaced with a "totality of the circumstances" test. Alexander nevertheless places great emphasis on these two prongs, as he challenges the veracity and basis of knowledge of each informant. Additionally, Alexander takes each piece of information provided in the oral affidavit and attacks it individually, offering an innocent explanation.

In the probable cause hearing before the magistrate in this case, the officer described his law enforcement training and experience related to drugs and methamphetamine laboratories and used four sources to demonstrate that under the totality of the circumstances, probable cause existed to search the Alexander property. According to the officer, a concerned citizen who wished to remain anonymous telephoned the officer on September 23, 2000, about an active methamphetamine laboratory. The caller stated that he had personally been to the property two to three times per week for the past year and a half. He reported that his wife was addicted to methamphetamine and that he had gone there with his wife in order to purchase the drug. While there, he had seen methamphetamine being produced inside the shed. The officer testified that the caller described in detail the manufacturing process used, but did not provide those details to the magistrate. The caller also described the property, including the exterior of the mobile home and shed, and other items on the property. The caller gave the names of the couple living there; the name, gender, and age of one of the three children living there; and the ages of the other two children.

As to the anonymous caller's basis of knowledge, this Court has stated that personal observation by an informant is "one of the strongest possible indications of a basis of knowledge." *See State v. Carlson,* 134 Idaho 471, 476, 4 P.3d 1122, 1127 (Ct.App. 2000). Here, as noted previously, the caller stated that he had personally seen Alexander produce methamphetamine in the shed. Therefore, the caller's basis of knowledge was sufficient.

As to the caller's veracity, although the affidavit in this case did not indicate that the anonymous informant had previously given information on which his past reliability could be demonstrated, the information supplied by an informant may be sufficiently reliable to support a probable cause finding if the information is corroborated by independent evidence. *See id.* In this case, much of the detail provided by the informant was corroborated by the officer during the course of his independent investigation. The officer searched through drug task force case files and found that law enforcement had received

a drug tip regarding the same people and property approximately one year earlier. This tip came from one of Alexander's neighbors. The officer contacted the neighbor, who indicated that she had observed constant traffic making short stops at the residence at all hours of the day and night for the past year and a half. After this conversation, the neighbor contacted the officer by phone on September 28, 2000, and reported that while on a walk she had smelled a chemical odor coming from the Alexander property, an odor she had also smelled there on previous occasions. This odor she described as smelling like kerosene.

The next evening on September 29, 2000, the officer observed two vehicles arrive at the property during one hour. One vehicle, a Volkswagon, was registered to Alexander and his girlfriend. This vehicle had arrived with two occupants and remained at the property. The other vehicle left the property within the hour.

On October 2, 2000, the officer spoke with the owner of the property. The officer testified that the owner described the property and stated that Alexander had been renting the property since June 1999. The owner stated that three children lived there with the couple. The owner also stated that the couple never requested that he come make any type of repairs, that they always paid their rent in cash, that they had built the shed on the property, and that the owner had been to the property only twice in the past year.

Although much of the corroborated information may also relate to innocent activity, the *Gates* Court has stated that because an informant is right about some things, he or she is more probably right about other facts. *Gates,* 462 U.S. at 244, 103 S.Ct. at 2335, 76 L.Ed.2d at 552. The *Gates* Court further stated that it is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay. *Id.* at 244–45, 103 S.Ct. at 2335–36, 76 L.Ed.2d at 552–53. Thus, the anonymous caller's veracity in this case was sufficiently established.

■ Alexander also argues that because the neighbor's veracity was not established, the neighbor's reports should be given little weight. This Court has stated that where the information comes from a known citizen informant rather than an anonymous tipster, the citizen's disclosure of her identity, which carries the risk of accountability if the allegations turn out to be fabricated, is generally deemed adequate to show veracity and reliability. *See State v. Larson,* 135 Idaho 99, 101, 15 P.3d 334, 336 (Ct.App.2000). A known citizen is one who provides facts from which his or her identity can be readily ascertained. *See id.* at 102, 15 P.3d at 337. In this case, the neighbor not only provided her name, but also indicated that she was one of Alexander's neighbors. The neighbor had previously provided information to law enforcement. Additionally, the officer had personal contact with her. Her identity, if it had not already been correctly ascertained at the time of the oral affidavit, likely would have been readily ascertainable under these facts. Thus, these facts support the conclusion that the neighbor was a citizen informant whose veracity should be presumed. Under these circumstances, the magistrate had a substantial basis for crediting the information provided by the anonymous caller, as well as the information provided by the neighbor.

■ As to Alexander's staleness argument, whether information regarding the presence of items in a certain place is stale depends upon the nature of the factual scenario involved. *See Carlson,* 134 Idaho at 477, 4 P.3d at 1128. There exists no magical number of days within which information is fresh and after which becomes stale. An important factor in a staleness analysis is the nature of the criminal conduct. If the affidavit recounts criminal activities of a protracted or continuous nature, a time delay in the sequence of events is of less significance. Certain nefarious activities, such as narcotics trafficking, are continuing in nature and, as a result, are less likely to become stale even over an extended period of time. *Id.*

In this case, the suspected criminal activity was represented as an ongoing production of

illegal drugs, which, as noted above, makes the information about that activity less likely to be stale. The information presented to the magistrate on October 2, 2000, was received by the officer during the previous two weeks. Although the oral affidavit did not provide the age of the information at the time the officer received it, the officer's testimony did state that, for the past year and a half, the informant had been to the property two to three times each week. The magistrate could have reasonably inferred that the informant had been to the property during the week in which he contacted the officer and that the information was not stale. Additionally, the neighbor had given information to the officer just three days before the oral affidavit. Thus, this information was also not stale.

The magistrate properly considered each source of information provided by the officer in the probable cause hearing. Under the totality of the circumstances, the anonymous informant's direct observations, coupled with the corroboration by other sources, provided a sufficient basis for the magistrate's finding of probable cause. The magistrate did not abuse its discretion when it found probable cause to believe that contraband or evidence of a crime would be found in the shed. Therefore, the warrant was properly issued. Accordingly, we affirm the district court's denial of Alexander's motion to suppress the evidence found in the shed.

**B.  Mandatory Fine**

Alexander argues that the mandatory statutory fine imposed by the district court violates the separation of powers doctrine found in Article II, Section 1, of the Idaho Constitution by taking away the inherent power of a sentencing court to impose a lesser fine or suspend the fine altogether. While acknowledging that Article V, Section 13, of the Idaho Constitution permits the legislature to mandate minimum sentences for crimes, Alexander contends that the word "sentences" as used in Section 13 does not include fines.

Alexander also argues that because the statute mandating a minimum fine is unconstitutional, the fine is excessive and constitutes cruel and unusual punishment. Alexander contends that the $10,000 fine is grossly disproportionate to his offense because he has no money and will not be able to earn enough money to pay the fine once out of prison. Alexander further asserts that the mandatory minimum fine took away the district court's ability to consider penological purposes and Alexander's character, which would have allowed the district court to fashion an appropriate sentence.

The constitutionality of a statute is purely a question of law over which the appellate court exercises free review. *State v. Cobb,* 132 Idaho 195, 196, 969 P.2d 244, 245 (1998). The appellate court is obligated to seek an interpretation of a statute that upholds its constitutionality. *Id.* Additionally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge,* 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). At the sentencing hearing, Alexander argued the constitutionality of the statute only under the separation of powers provisions of the Idaho Constitution. Therefore, we conclude that the excessiveness and cruel and unusual punishment arguments have been waived on appeal and will not be addressed further.

Article V, Section 13, of the Idaho Constitution in its amended form prohibits the legislature from depriving the judicial branch of any power which rightly pertains to it. That section does, however, grant the legislature the power to impose mandatory minimum sentences for ·any crimes. This legislative power has been upheld by the Idaho Supreme Court. *See State v. Pena–Reyes,* 131 Idaho 656, 962 P.2d 1040 (1998). Pursuant to this power, the legislature in I.C. § 37–2732B(a)(3) has provided that "any person convicted of trafficking in methamphetamine and/or amphetamine by attempted manufacturing shall be sentenced to a mandatory minimum fixed term of imprisonment of two (2) years ... and fined not less than ten thousand dollars ($10,000)." Alexander pled guilty to this offense and received two years fixed imprisonment and a $10,000 fine, which in the district court's view was required by the statute.

Although Alexander suggests that the statute can be read to make the fine optional or subject to reduction by the district court, the fine is indeed mandatory. Section 37-2732B(a)(3) states that an offender *"shall be ... fined not less than* ten thousand dollars ($10,000)."* (Emphasis added.) Furthermore, I.C. § 37-2732B(a)(8) provides that "imposition or execution of sentence shall not be suspended, deferred, or withheld." Additionally, the heading describing the contents of I.C. § 37-2732B is titled "Trafficking—Mandatory Sentences." From this, the legislature has made it clear that both the periods of incarceration and the fines provided in those statutory provisions are part of the mandatory sentences authorized by the state constitution.

This Court has treated the mandatory minimum fines in I.C. § 37-2732B as being a part of the sentences. *See State v. Rogerson,* 132 Idaho 53, 966 P.2d 53 (Ct.App.1998). In *Rogerson,* the defendant was convicted of trafficking in methamphetamine and marijuana under I.C. § 37-2732B. The defendant was sentenced to imprisonment and given the statutory minimum fines. In the opinion, this Court referred to the defendant's sentences as "including the fines." *Id.* at 58, 966 P.2d at 58. This Court also addressed the defendant's argument that the statute violated the separation of powers provisions in the Idaho Constitution. This Court rejected that argument and upheld the statute under Idaho Supreme Court precedent.

Alexander urges this Court to consider the definition of the word "sentence" in *Black's Law Dictionary. Black's Law Dictionary* definition of sentence includes "the *punishment* imposed on a criminal wrongdoer."

BLACK'S LAW DICTIONARY 1367 (7th ed.1999) (emphasis added). *Black's Law Dictionary* defines the word "fine" as a "pecuniary criminal *punishment." Id.* at 647 (emphasis added). Therefore, contrary to Alexander's position, these definitions further support the conclusion that the statutory fine in I.C. § 37-2732B(a)(3) is part of the mandatory sentence imposed by that section and authorized by the Idaho Constitution. Because the Court has upheld the legislative power to mandate minimum sentences, and has treated mandatory minimum fines as part of the sentences, the fines, as part of the sentences, do not create a separation of powers violation under the Idaho Constitution.

## III.

## CONCLUSION

The search warrant in this case was supported by probable cause to search Alexander's shed. Accordingly, the district court did not err in denying Alexander's motion to suppress. Additionally, the mandatory minimum fines imposed by statute do not violate the separation of powers principle provided for in the Idaho Constitution. Therefore, we affirm Alexander's judgment of conviction and sentence.

Judge GUTIERREZ and Judge Pro Tem WILPER concur.