**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44912**

| | |
|---|---|
| **STATE OF IDAHO,** | ) **2018 Unpublished Opinion No. 454** |
| | ) |
| **Plaintiff-Respondent,** | ) **Filed: May 16, 2018** |
| | ) |
| **v.** | ) **Karel A. Lehrman, Clerk** |
| | ) |
| **DAVID WILLIAM NELSON,** | ) **THIS IS AN UNPUBLISHED** |
| | ) **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) **BE CITED AS AUTHORITY** |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction for possession of a controlled substance and being a persistent violator, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

David William Nelson appeals from his judgment of conviction for possession of a controlled substance and being a persistent violator. He argues that the district court erred in denying his motion to suppress evidence found during a search of a friend's apartment. Nelson also argues that the district court erred in denying his motion for substitute counsel because the district court did not provide Nelson with a full and fair opportunity to be heard on the motion. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Nelson was released on parole in March 2016 following a period of incarceration in a separate case. As a condition of parole, Nelson signed an agreement of supervision containing the following waiver:

1

**5.** **Search**: I consent to the search of my person, residence, vehicle, personal property, and other real property or structures owned or leased by me, or for which I am the controlling authority conducted by any agent of IDOC or a law enforcement officer. I hereby waive my rights under the Fourth Amendment and the Idaho constitution concerning searches.

On August 11, 2016, a police officer was conducting a drug investigation at an apartment belonging to one of Nelson's friends. Peering through a window, the officer observed Nelson heating a methamphetamine pipe. After observing Nelson for a few minutes, the officer called another officer for assistance. When Nelson saw the officer outside of the window, Nelson grabbed his backpack and left the apartment. The second officer intercepted Nelson at the front of the apartment while the first officer observed Nelson's friend place the glass pipe in the top drawer of a nightstand. When the first officer met Nelson's friend outside of her apartment, she agreed to collect the pipe for the officer. The substance in the pipe tested positive for methamphetamine.

Nelson was charged with possession of a controlled substance, I.C. § 37-2732(c)(1), and a persistent violator enhancement. Nelson filed a motion to suppress "the testimony of the officer regarding his observations and any evidence subsequently found" during the search of the residence, asserting the search was warrantless and that the officer "intruded upon the curtilage of the residence to peer through the window." At the suppression hearing, the State asserted that it was Nelson's burden to first establish a privacy interest in the residence. Nelson testified and argued that he had a privacy interest as an overnight guest, although he was not an overnight guest at the time of the search. Nelson also suggested that a probation search should be conducted by a probation officer. The district court denied the motion, finding that Nelson waived his Fourth Amendment right as a condition of parole.

At trial, a jury found Nelson guilty, and he admitted to being a persistent violator. I.C. § 19-2514. After trial, but before sentencing, Nelson filed a motion to substitute counsel. The district court held a hearing on the motion and denied Nelson's request. The district court subsequently sentenced Nelson to a unified term of seven years, with a minimum period of confinement of two years. Nelson appeals.

## II.

## ANALYSIS

### A. Motion to Suppress

Nelson asserts that the district court erred in denying his motion to suppress. Specifically, Nelson argues that the district court erred in finding he waived his Fourth Amendment rights as a condition of parole because the State did not present sufficient evidence to establish that Nelson's parole agreement was valid and effective on the date of the search or that he voluntarily consented to the search waiver in his parole agreement. Nelson also argues that, as an occasional overnight guest, he had a privacy interest that was violated when the officer entered the curtilage without a warrant. The State argues that Nelson had the burden to establish a privacy interest and that the district court correctly concluded that Nelson failed to meet that burden. We affirm the district court and decline to consider the constitutional arguments Nelson has raised for the first time on appeal.

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). When a defendant mentions the general basis for a motion to suppress, his or her arguments on appeal are limited by what was argued to the trial court. *State v. Armstrong*, 158 Idaho 364, 367, 347 P.3d 1025, 1028 (Ct. App. 2015). This is so the court has the opportunity to address the argument in the first instance and rule accordingly. *Id.* 158 at 368, 347 P.3d at 1029.

The basis of Nelson's motion to suppress was that the search was warrantless and the "officer intruded upon the curtilage of the residence to peer through the window." At the suppression hearing, the district court noted the search was warrantless and indicated the burden was, therefore, on the State. The State disagreed, asserting that Nelson first had the burden to establish a privacy interest in the residence that was searched, which Nelson had not done in his motion to suppress. Nelson agreed and testified that he did not reside in the apartment that was searched, but he had spent the night there five or six times two weeks before the search. He did not spend the night there between the dates when the challenged search occurred. On cross-examination, Nelson admitted he was on parole at the time of the search. When presented with State's Exhibit 1, Nelson identified it as a probation and parole agreement that he signed "somewhere around" May 8, 2016, when he got out of prison, which was approximately three

3

months prior to the search. The parole agreement was admitted without objection. Following Nelson's testimony, defense counsel argued that, under *State v. Fancher*, 145 Idaho 832, 186 P.3d 688 (Ct. App. 2008), and the cases cited therein, he was an overnight guest and had a legitimate expectation of privacy as such. Defense counsel also asserted that, in *State v. Turek*, 150 Idaho 745, 250 P.3d 796 (Ct. App. 2011), the Court "held that a probation search should be conducted by a probation officer," but counsel acknowledged that there were "language differences" between the search term at issue in *Turek* and Nelson's search term that could be a "problem." The district court denied the motion after concluding that, even assuming Nelson was an overnight guest, Nelson had no standing to challenge the search in light of his parole waiver.

Nelson's claims of error on appeal are based on arguments he did not present to the district court. Nelson did not challenge the parole waiver based on its validity at the time of the search, nor did he contend that he did not voluntarily consent to the search waiver. Rather, Nelson acknowledged he signed the parole waiver and did not object to admission of the waiver as an exhibit. Nelson's only argument to the district court in relation to the waiver was that, under *Turek*, a probation search should be conducted by a probation officer. Even then, Nelson acknowledged that the language differences between the waiver at issue in *Turek* and his own waiver could be a "problem." Nelson's acknowledgment that the differences could be problematic in terms of whether *Turek* applied to his case was correct. The search waiver at issue in *Turek* provided that the defendant was required to submit to searches "at the request of" the probation officer or law enforcement. *Id.* at 746, 250 P.3d at 797. Two probation officers and a police officer went to Turek's residence to conduct a home visit and, although Turek was not home, they opened an unlocked shed door, looking for Turek. The officers discovered a marijuana growing operation inside the shed and Turek was subsequently arrested for manufacturing marijuana. This Court concluded that Turek was entitled to suppression because the plain language of Turek's search waiver required a "request," interpreted as informing the probationer of the officer's intent to search, and no such request was made prior to the search. *Id.* at 752, 250 P.3d at 803.

Unlike the search provision at issue in *Turek*, the provision in Nelson's case does not require a request as a predicate to a search. Nelson does not argue otherwise on appeal. In fact,

Nelson does not reference *Turek* in his opening brief despite his reliance on it before the district court. Rather, the first time Nelson discusses *Turek* is in his reply brief where he quotes it for the proposition that the consent exception to the warrant requirement is governed by the scope of the consent. Nelson then appears to argue that *Turek* and other probation waiver cases make it "clear" that scope of consent requires a determination as to whether the consent was voluntary and intelligent and whether a "parolee or probationer *can* consent when it is a choice between imprisonment or signing such a waiver/consent in order to be able to enter or remain in the community." Even assuming the premise of Nelson's argument that the issue is consent versus the reduced expectation of privacy resulting from the parole waiver, *Turek* does not support Nelson's overarching assertion that the State must prove a parole waiver was entered into voluntarily and intelligently absent a challenge by the defendant that the waiver was not voluntary--a challenge Nelson never made in relation to his motion to suppress. And, the law is contrary to Nelson's contention that a parolee cannot consent to a parole waiver. Search waivers imposed as a condition of parole or probation are enforceable. *State v. Purdum*, 147 Idaho 206, 208, 207 P.3d 182, 184 (2009); *State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987); *State v. Santana*, 162 Idaho 79, 82-84, 394 P.3d 122, 125-27 (Ct. App. 2017); *Turek*, 150 Idaho at 749, 250 P.3d at 800. Any claim that parolees and probationers cannot consent to a Fourth Amendment waiver as a condition of release is without merit.

Because Nelson did not advance the arguments in district court that he now makes on appeal with respect to his parole waiver, we will not consider them. Nelson has failed to show error in the district court's denial of his motion to suppress.

## B.    Substitution of Counsel

Nelson argues that the district court failed to provide him a "full and fair opportunity to present facts in support of his request for substitute counsel."[1] The State responds that the district court's hearing on Nelson's motion afforded Nelson the opportunity to be heard on the

---

[1]    Nelson does not challenge the denial of his motion for substitute counsel on the merits. He only challenges his opportunity to be heard on the motion and requests remand for the purpose of determining "whether there exists good cause for the appointment of substitute counsel."

merits of his motion. We hold that Nelson has failed to show he was deprived of his right to be heard on his motion for substitute counsel.

When a criminal defendant files a motion for substitute counsel, the trial court must afford the defendant a full and fair opportunity to present the grounds for the motion. *State v. Clayton*, 100 Idaho 896, 898, 606 P.2d 1000, 1002 (1980). In conducting the hearing, the trial court must make some reasonable, nonsuggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her Sixth Amendment right would be violated but for substitution. *State v. Lippert*, 152 Idaho 884, 887, 276 P.3d 756, 759 (Ct. App. 2012).

Following trial, but before sentencing, Nelson filed a motion for substitute counsel alleging a variety of reasons he believed his attorney performed deficiently at trial. Nelson also alleged that "there was a complete breakdown in communication" because counsel "only answered perhaps 5% of [Nelson's] communications." The district court held a hearing on Nelson's motion and advised Nelson that the purpose of the hearing was to provide him with an opportunity to "express his concerns" and "explain anything else" in support of his motion for substitute counsel. In response, Nelson set forth his specific complaints regarding counsel's performance at trial and stated his belief that counsel "conspired with the prosecution to give [him] less than satisfying representation." The basis of Nelson's conspiracy allegation was "the way [counsel] acted during trial" and counsel's failure to do what Nelson "asked him to" including "not asking the right questions" and not "putting forth a good effort at trial." The district court summarized Nelson's complaints as dissatisfaction with counsel's representation, and Nelson agreed with that characterization, noted that he did not believe counsel had his "best interests at heart," and expressed his lack of "faith" that counsel would do what he asked. The district court also inquired of counsel and asked if counsel believed the attorney-client relationship was "irretrievably broken." Counsel indicated that he did not think it was and that Nelson's complaints regarding counsel's performance could be raised in post-conviction. The

district court denied Nelson's motion and advised Nelson and counsel to have a "good heart-to-heart and figure out what [they were] going to do for sentencing."[2]

We can find no basis for concluding that the district court did not afford Nelson a full and fair opportunity to be heard on his motion for substitute counsel. The district court held a hearing on Nelson's motion at which it gave Nelson a full opportunity to explain the reasons for his request for substitute counsel. This Court's opinion in *State v. Nath*, 137 Idaho 712, 52 P.3d 857 (2002), which Nelson argues is "strikingly similar" to his case, does not change our conclusion. In *Nath*, the defendant filed a motion for substitute counsel several days before trial and provided the district court with written statements regarding motions he wanted made, documents he wanted procured, and witnesses he thought his attorney should have deposed. In ruling on the motion, the district court stated its understanding that Nath's complaint was that his attorney was not following Nath's requests and instructions on which motions to file. Nath was not allowed to be heard on the motion. The Court held that Nath was not given a full and fair opportunity to present the reasons in support of his motion and concluded the trial court's review of Nath's motion did not encompass the totality of his claims. *Id*. at 715, 52 P.3d at 860.

Unlike in *Nath*, where the defendant was not allowed to be heard on his motion, the district court conducted a hearing at which Nelson was given a full and fair opportunity to explain the bases for his motion. To the extent Nelson's claim is predicated on an assertion that the district court erred by not asking more specific or different questions, that is not what the law requires. *See Clayton*, 100 Idaho at 898, 606 P.2d at 1002 (stating that "the trial judge should not be required to act as advocate for the defendant in a criminal proceeding"). The district court's only obligation was to afford Nelson a full and fair opportunity to present the facts and reasons in support of his motion for substitution of counsel. That Nelson may be unsatisfied with the record he made is insufficient to show error in the opportunity to be heard afforded by the district court. Nelson has failed to show the district court did not provide him with a full and fair opportunity to be heard on his motion for substitute counsel.

---

[2] When given the opportunity to speak at sentencing, Nelson did not express any concerns regarding counsel's performance at that hearing.

## III.

## CONCLUSION

The district court did not err in denying Nelson's motion to suppress, and the district court afforded Nelson a full and fair opportunity to be heard on his motion for substitute counsel. Therefore, Nelson's judgment of conviction for possession of a controlled substance and being a persistent violator is affirmed.

Judge GUTIERREZ and Judge HUSKEY, **CONCUR**.